CHANDLER B. FOWLER, Appellant, v. WINSLOW S. PEIRCE, Comptroller, &c., Respondent.

In an application for a *mandamus*, the statute does not require a replication, except where in the discretion of the Court, it is necessary to explain or avoid facts set up in the defendant's answer.

A *mandamus* may issue to compel the Comptroller of State to account to a member of the Legislature, for the daily compensation fixed by law.

The Court may go behind the record evidence of a statute, and inquire whether it was passed or approved in accordance with the constitution.

In approving a statute, the Executive acts as a component part of the law-making power, and his power of approval ceases on the adjournment of the Legislature.

Where an act was presented to the Governor for approval on the last day of the session, and purported to have been approved by him on that day, but in fact was not approved until the next day after the adjournment: *Held*, that the act was void, and that parol evidence was admissible to show when the act was approved.

APPEAL from the Sixth Judicial District.

Fowler filed his petition in the District Court of Sacramento, on the 11th of February, 1852, stating that he was a member of the Assembly, and as such, entitled to compensation at the rate of $16 per day; that the State was indebted to him in the sum of $592, for thirty-seven days' services, from the 5th of January to the 10th of February, 1852, inclusive; an account of which, approved by the chairman of the committee on accounts, and signed by the speaker of the Assembly, was annexed to the petition; that he had presented the said account to Peirce, comptroller of State, who refused to audit and allow the same; and praying for a *mandamus*, requiring Peirce to audit the account, &c. Peirce filed an answer, insisting, that by the Act of May 1st, 1851, concerning salaries, &c., the petitioner was entitled to only ten dollars per day, which he was, and always had been, willing to audit, &c.; and admitting the other facts stated in the petition.

The cause was tried by the Court, and the parties submitted a written statement of facts, admitting the presentation of the

account, and the refusal to audit for more than $10 per day; that John McDougal, late Governor, would testify that the above mentioned Act was submitted to him for approval, on the 1st day of May; but was in fact approved on the 2nd of May, after the adjournment of the legislature, and the approval was never reported to either House; which facts could also be proved by others; and agreeing that those facts should be deemed admitted, should the Court decide that such testimony was admissible. The defendant objected to the admissibility of the testimony; and the Court sustained the objection, and rendered judgment, dismissing the petition, with costs. The petitioner appealed.

———, for the appellant.

*E. Randolph*, for the respondent. The briefs of counsel are not on file.

Chief Justice MURRAY. It is contended by the appellee, that the judgment of the Court below must be affirmed, because there are no questions raised upon the record on which it can be reversed: and that the plaintiff should have filed a replication to the defendant's answer, in order to bring the questions now raised properly before the Court. The complainant avers that he is entitled to a certain *per diem* compensation under the constitution, for services as a member of the legislature. The answer admits the services, but denies the *per diem* claimed, and alleges that the plaintiff is only entitled to a less sum, as fixed by the "Act concerning salaries of officers and pay of members of the legislature, passed May 1st, 1851." The 472nd section of the act regulating proceedings in civil cases, provides that when the answer raises a question of fact essential to the determination of and affecting the substantial rights of the parties, the Court may, in its discretion, order the same to be tried by a jury, &c. Section 476 of the same act provides that when an answer is made, which does not raise such an issue as mentioned in section 472, but only such matter as may be explained or avoided by a reply, the Court may, in its discretion, give time for replying. It will be seen by an examination of these sections that the law does not require a replication, except in those cases where, in the discretion of the Court, the facts in the defendant's answer may be explained or avoided. Our system of

pleading only requires facts to be stated with sufficient certainty, to enable the Court and parties to understand the issue to be determined.   We think the pleadings are sufficient to raise the questions now made before the Court.   But it is said the remedy by *mandamus* is improper; that the Court may command an officer to do his duty, but cannot say what that duty is, or how he shall proceed; that such practice would indirectly give creditors a right to sue the State, when the legislature had failed or refused to provide a remedy.   It is true that Courts cannot compel judicial or other officers vested with legal discretion to act otherwise than in the exercise of that discretion.   In the present case, it is the duty of the comptroller to audit the appellant's account.   The nature and amount of the services are ascertained, (or not disputed,) and the law has fixed the compensation.   The comptroller, who is bound to know the law by which he is required to act, has no discretion in such a case.   Nothing remains to be ascertained.   He must audit the account according to the law in force; and it will be no sufficient answer to a mistake or refusal on his part, to say he acted according to his discretion. The act of auditing an account, under circumstances like these, becomes merely ministerial, and can be enforced by *mandamus.* The objection that this is an indirect mode of suing the State, is not substantial.   The legislature have neglected as yet to pass any law giving general creditors of the State a remedy for enforcing their demands.   But for the purpose of carrying on the State government, provision has been made for the payment of officers and certain expenses of the State; and when the legislature have fixed the amount of compensation, the fund out of which it shall be paid, and imposed the duty of auditing and paying the same on any officer or officers, they have given a remedy in that case which may be enforced by the Courts of the State.   It is contended, however, that if the remedy is the correct one, the Court below properly refused to admit testimony that the "Act concerning officers, &c., purporting to have been approved on the 1st of May, 1851, was not in fact approved until the second day of said month, and after the legislature had adjourned.   It is said that acts of parliament, or of the legislature, are records of the highest rank, and can be tried only by themselves:—that parol evidence is inadmissible to alter or con-

tradict them.   On the other hand, it is contended that, while the best evidence, they are not conclusive:—that Courts of law may go behind the record itself, to ascertain if the law was passed in conformity with the requirements of the Constitution.  It is a matter of no little doubt and delicacy to determine how far courts have power to go beyond the record evidence of legislative acts;—to inquire into the mode of passing a law, or the motives that induced its passage.   The necessity of confining every branch of government to its own proper sphere, and the danger of encroachment upon the rights and prerogatives of each other, render it difficult to determine the exact length to which these inquiries may safely proceed.   It seems to be settled that the motives or inducements of legislators cannot be inquired into by a Court of law.   They are amenable to their respective bodies; and to arraign their private motives before the tribunals of the country would destroy that independence and discretion with which they are vested, and open the door to confusion and fraud. The question presented for our determination is different; and we are called upon to decide whether the courts of the land, to whom belong the guardianship and exposition of the laws and Constitution, have power to go behind the act itself to inquire whether the legislature, or the executive as a component part of the legislative power, have, in passing or approving such act, violated or disregarded the mode pointed out by the organic law of the land.   It may be well to remark here, that the rule laid down on the subject of parol evidence is entirely foreign to this case, and only applies to written contracts between the parties: so that if a legislative act cannot be impeached, it is in consequence of the high dignity and supposed absolute verity of the record, and not because of the rule referred to.   In fact, if a court cannot resort to parol evidence in such cases, the door to all inquiry is closed, as it is impossible, from the nature of the case, to obtain any other evidence in most cases that may arise.   I am of opinion that there is no difference between declaring a law unconstitutional for matters patent upon its face, though passed regularly, and a law apparently good, yet passed in violation of those rules which the Constitution has imposed for the protection of the rights and liberties of the citizen.   If such matters cannot be inquired into, the wholesome restrictions which the Constitu-

tion imposes on legislative and executive action become a dead letter, and Courts would be compelled to administer laws made in violation of private and public rights, without power to interpose. The fact that the law-making power is limited by rules of government, and its acts receive judicial exposition from the courts, carries with it, by implication, the power of inquiring how far those exercising the law-making power have proceeded constitutionally. The weight and character of the testimony necessary to disprove the record may be difficult to determine; but once possessing the power, the Court must proceed according to known rules. The agreed case, signed by the Attorney-General, admits that evidence can be adduced to show that the act referred to was not signed by the Governor until the 2nd of May, after the legislature had adjourned. It is a matter of no little doubt to me as to the mode which should be pursued by a court in order to ascertain whether a law is properly upon the statute book, and whether it has been passed in conformity to constitutional requirements. In the case of the People *v.* Purdon, 2 Hill, where the question was raised, whether the Court could go behind the Statute book and inquire whether an act coming within the two thirds clause of the Constitution had passed by the requisite number of votes, and the Court decided that it had power to make such inquiry ; and upon inspection of the bills on file in the Secretary of State's office, declared such act void. In delivering the opinion of the Court in that case, Justice Bronson says : "If we wish to perpetuate and uphold free institutions, we must maintain a vigilant watch against all encroachments of power, whether arising from mistake or design, or from whatever cause they may proceed." Chancellor Walworth affirmed this opinion in the Court of Errors, and held that the certificate of the Secretary of State was not conclusive evidence that a law had passed by a constitutional majority. It is said that these decisions go no farther than to authorize the Court to look behind the certificate or exemplification to the record itself. It is true they do not go the length contended for in this case ; but there is sufficient to show that the Court considered it in its power to prevent any encroachments upon the Constitution by the legislative branch of the government, and that such encroachments were the proper subject of judicial investigation. Whether the Court

would have felt at liberty to go beyond the act on file in the Secretary of State's office, and inform itself whether the same was valid or not, does not clearly appear. In Hunt v. Van Alstyne, 25 Wendell, the Court say there are but two ways of contradicting a legislative record; first, by the journals, which are very unsatisfactory, and scarcely amount to proof at all; and second, by parol evidence, which is still more unsatisfactory in its character. Nothing short of absolute necessity, say the Court, would justify a resort to such evidence. In this case the Chief Justice says that he does not wish to commit himself on the proposition; and it is clear that he had in his mind an attempt to disprove an act by the parol testimony of those present during the hurry and confusion of its passage, which testimony, from the nature of the case, must have been unsatisfactory. In the case of the People v. Clark, this Court held that evidence could be introduced to show the time when a bill received the approval of the executive. In that case, the relator claimed an office by virtue of an appointment made under a law passed on a particular day. The defendant claimed the office by an election on the same day: and the Court held that if the act was approved after the determination of the election of the defendant, then it did not authorize the appointment, as the relator had already acquired an estate in the office by the election; and testimony was admitted to ascertain that fact. A distinction is taken between testimony admitted to explain or ascertain some fact, and testimony introduced to impeach the act itself. If testimony can be introduced to show the exact point of time when an act was approved, which fact, when ascertained, will render the act void; testimony showing that the law was not approved, must be equally admissible, as the effect accomplished is the same. If, however, I am in error in this proposition, or in the analogies drawn from other cases, I hold the authority to inquire beyond the record of a legislative act for the purpose of ascertaining whether the same has a constitutional existence to be incident to all courts of general jurisdiction, and necessary for the protection of public rights and liberties. As before remarked, it may be very difficult to say in what precise manner the Court should proceed to ascertain the existence of the law. Courts are bound to know the law, both statute and common. It is their province

to determine whether a statute be law or not   *Nul tiel record* cannot be pleaded; but it must be tried by the judges, who must inform themselves in any way they can; from history, general observation, the examination of parties, or such other means as are at their command.   It is true that the record of the legislative act might, in the first instance, be *prima facie* evidence of its correctness, and the Court might, in doubtful cases, give the benefit of the doubt in favour of the record; but where the Court was satisfied that a law had never passed according to constitutional provisions, and that it was no law in fact, what apology or excuse would be offered for enforcing its provisions?   If the Courts are to be stopped by the record from this inquiry, they might, as in the present instance, be compelled to administer as law that which never was law, merely because it purported to be a legislative record, when inquiry would show that it wanted one of the essential requisites of a record, viz., that it was not signed by the proper officers within the constitutional time for its approval, and was therefore wholly worthless and void.   It is said that parties would, in every case, dispute the existence of the law; and that such practice would lead to confusion and perjury. I have already said that this is a question for the Court; and why should not the citizen whose life, property, or liberty is made forfeit by the operation of a particular law, be allowed to show to the Court, if it is not advised of the fact, that the same was passed in violation of his constitutional rights, or that it has been placed among the archives of government by fraud or mistake, and never had a legal existence?   Is there no way of ascertaining whether the approval of the executive was forged, or whether officers have acted contrary to their constitutional obligations?   It is no sufficient answer that we must rely on the integrity of the executive, or other officers, and that the record of acts is conclusive evidence of the truth of such acts.   Our notions of free institutions, revolt at the idea of placing so much power in the hands of one man, with no guard upon it but his integrity; and our constitution has wisely so distributed the powers of government, as to make one a check upon the other, thereby preventing one branch from strengthening itself both at the expense of the co-ordinate branches, and of the public.   Such evidence should be of the

most satisfactory character; and there is less to be apprehended from the subornation of witnesses, subject to the tests which the law imposes, than from the exercise of so great a power without restraint or accountability. It is contended that the signature of the executive to an act, after the adjournment of the legislature, but within ten days after its passage, does not render it unconstitutional. The 17th section of the 4th article of the constitution provides that, "If a bill shall not be returned by the Governor within ten days after it shall have been presented to him,—Sundays excepted,—the same shall be a law in like manner as if he had signed it; unless the legislature, by adjournment, prevent such return." The constitution of the United States is the same, with the exception of the additional words, "in which case it shall not become a law," which do not alter the general meaning of the section; and by no rule of construction can it be held, that the adjournment of the legislature before the return of a bill, would make it a law, unless disapproved by the executive within ten days, or that the Governor has any authority to sign the same after the adjournment. A practical exposition entirely different from such a construction, has been always given by Congress, and the legislature of every State having similar constitutional provisions. In fact, there is really no limit to the time within which the executive must approve an act, conceding that it may be done after the adjournment of the legislature: so that it might be approved one day or one month afterwards. The executive is, by the constitution, a component part of the law-making power. In approving a law, he is not supposed to act in the capacity of the executive magistrate of the State, whose duty it is to see that the laws are properly executed, but as a part of the legislative branch of the government. This power is *a unit*, though distributed; and the parts can only act in unison. Whenever a part ceases to act, the whole becomes inoperative. The executive act owes its vitality to the existence of the legislative body. Upon the adjournment of that body, the power ceases, and all acts of a legislative nature are void. It is not necessary to decide whether the testimony of the executive would be admissible to disprove his own official act, as the record admits that the same facts can be proved by other com-

petent witnesses, which testimony the Court below should have received.

> The judgment must be reversed, and the Court below directed to award a peremptory *mandamus*, in accordance with this opinion.

Justice ANDERSON also delivered a long opinion, concurring in the result of the judgment pronounced by the Chief Justice.