## PEOPLE OF THE TERRITORY OF UTAH, EX RELATIONE S. C. HALLER, PETITIONER, *v.* NEPHI W. CLAYTON, RESPONDENT.

EVIDENCE—AUTHENTICATION OF STATUTES—PAROL TESTIMONY.—Parol testimony will not be received to contradict the record in the office of the Secretary of the Territory of a statute, which appears to have been duly passed, in order to show by such testimony that the act was passed and approved by the Governor after the period of sixty days limited by law for the session of the legislature had expired.

COURT COMMISSIONERS.—Court commissioners, appointed one for each district, whose duty it is to examine all court certificates given to jurors and witnesses, and to examine as to service performed, swearing witnesses when necessary, and to allow the amount if found correct, or to allow what is found to be correct, and to draw upon the territorial treasurer for money for this purpose, are not officers that the governor should appoint under sec. 1857, Revised Statutes U. S.

CONSTRUCTION OF STATUTE—WITNESS FEES.—A law of the territory, approved March 8, 1888, fixing the fees for jurors and witnesses, should be given a prospective and not a retrospective effect, and the fees allowed should be those fixed by law at the time the service was rendered.

ORIGINAL proceedings in *mandamus* against Nephi W. Clayton, auditor of the territory of Utah; defendant moved the court to quash the alternative writ of *mandamus*.

*Mr. O. W. Powers* and *Mr. Samuel A. Merritt*, for relator.

*Mr. J. G. Sutherland* and *Mr. Thomas Marshall*, for respondent.

ZANE, C. J.:

The defendant moves the court to quash the alternative writ of *mandamus* issued in this case. It is alleged in the petition that the relator, S. C. Haller, was entitled to receive from the territory the fees due him as a witness before the grand jury; that the defendant, the auditor of the territory, refused to audit them, for the reason that a statute made it the duty of a court commissioner to audit and pay the claim; that said law purports to have been approved March 8, 1888; but that the same in fact was not passed or approved until the 10th day of that month; and that the session of the legislature expired by limitation, at 12 o'clock, midnight, on the 8th day of the month. The defendant moves the court to quash the writ, because the petition does not state facts sufficient to constitute a cause of action. An act amending section 1852 of the Revised Statutes of the United States, in force December 23, 1880, declares that the sessions of the legislative assemblies of "the several territories of the United States shall be limited to 60 days' duration." It appears that the 60 days in this case expired on March 8th. After the expiration of the 60 days, the legislature had no power to pass any bill, nor had the governor any power to approve such bill. The date of the passage and approval of the bill must be ascertained by the court. The court must take judicial notice of the evidence of the passage and approval of legislative enactments. No issue of fact as to the passage or approval of them, or as to their date, can be made upon which the parties may offer evidence. Whenever such a question arises, the court, in deciding the issue, should take judicial notice of such facts as it may properly consider. The evidence of public laws should be preserved in public and permanent records. The facts upon which their existence depends should be accessible to all, because all are required to know them, in order to make their transactions and their conduct conform to them; and such records should be preserved until the time has passed during which reference to them may be necessary. The authenticity of laws should not be intrusted to the memory of individuals. There-

fore parol testimony cannot be received to prove their passage or their approval. Evidence from such transient, uncertain and secret source cannot be relied upon to authenticate legislative enactments. In the case of *State* v. *Smith*, 44 Ohio St., 348, the court said: "It seems to be well settled that courts will take judicial notice of all that is necessary to the authenticity of a statute." It is said by Wharton, in his work on Evidence (section 295): "Courts will take judicial notice of the modes by which domestic laws are authenticated. Hence, an English court is supposed to be judicially acquainted with the rules, practice and prerogatives of parliament; an American court with the rules, practice and prerogatives of the federal and state legislatures to which it is subject. So, as we have seen, a court will take judicial notice of the journals of a legislature to determine whether an act is constitutionally passed, or whether it has passed by reason of not having been returned in proper time by the governor. There is, then, no need of stating what appears upon the journals of a legislature relative to the passage of a law. Such matters are judicially noticed without averment, and the same effect given them as if averred. . . . Out of a multitude of citations not one is found in which any court has assumed to go beyond the proceedings of the legislature, as recorded in the journals, required to be kept in each of its branches, on the question whether a law has been adopted. . . . Imperative reasons of public policy require that the authenticity of laws should rest upon public memorials of the most permanent character. They should be public, because all are required to conform to them; they should be permanent, that rights acquired to-day upon the faith of what has been declared to be law shall not be destroyed to-morrow, or at some remote period of time, by facts resting only in the memory of individuals." In the case of *Fowler* v. *Peirce*, 2 Cal., 165, the court held that parol evidence was admissible to show that the governor's signature to a bill purporting to have been made on the 1st day of May, and at a time when he had the right to sign it, was written in fact on the next day, and at a time when he had no power to sign it. This decision is at

variance with the rule announced above. But we regard the case of *Fowler* v. *Peirce* as overruled by the later case of *Sherman* v. *Story,* 30 Cal., 253. This last case holds that an act of the legislature appearing to be properly enrolled, authenticated, and deposited with the secretary of state is a record which is conclusive evidence of the passage of the act, and that the same passed as enrolled; that neither the journals of the legislature, nor the bill as originally introduced, nor the amendments attached to it, nor parol evidence, can be received to show that it did not become a law in accordance with the prescribed forms, or that it did not become a law as enrolled. The court said: "The result of the authorities in England and in the United States is that at common law, whenever a general statute is misrecited, or its existence denied, the question is to be tried and determined by the court as a question of law; that is to say, the court is bound to take notice of it, and inform itself the best way it can; that there is no plea by which it can be put in issue and tried as a question of fact; that if the enrollment of the statute is in existence, the enrollment itself is the record, which is conclusive as to what the statute is, and cannot be impeached, destroyed or weakened by the journals of parliament or any other less authentic or less satisfactory memorials; and that there has been no departure from the principles of common law in this respect in the United States, except in instances where a departure has been grounded on or taken in pursuance of some express constitutional or statutory provision requiring some relaxation of the rule in order that full effect might be given to such provisions." After the foregoing decision was rendered, section 15 of article 4 of the present constitution of California was adopted, viz.: "That on the final passage of all bills they shall be read at length, and the vote shall be by yeas and nays upon each bill separately, and shall be entered on the journal, and no bill shall become a law without the concurrence of a majority of the members elected to each house." Under this provision the same judge who delivered the opinion in the case of *Sherman* v. *Story, supra,* after he became judge of the ninth cir-

cuit of the United States, said, in a concurring opinion, in *Railroad Tax Case*, 8 Sawy., 281, 13 Fed. Rep., 722: "Under the decisions of the courts upon constitutional provisions in all respects similar to that in the present constitution of California it is settled that the court, to inform itself, will look to the journals of the legislature. . . . Unless this mode is adopted of resorting to the journals to ascertain whether a statute has been legally passed or not, experience and the number of cases that have already arisen under similar constitutional provisions demonstrate that the requirements of the constitution that the vote shall be taken by yeas and nays, and a majority of the members required to vote in the affirmative on the final passage of an act, would be of little value."

The case of *Gardner* v. *Collector*, 6 Wall., 499, is cited in support of the proposition that the court may look back of the statute book, and the original engrossed bill on file in the office of the secretary of state, and even beyond the journals kept by the two houses. In that case the president omitted the year in attempting to give the date of his approval of the act questioned. Two propositions were insisted upon—*First*, that the president alone could make the record to show the date of his approval; *second*, that if such record was defective in respect to the year, no resort could be had to extrinsic evidence to supply that defect. The court held that no provision of the constitution and no act of Congress imposed on the president the duty of affixing a date to his signature of a bill, and that the court might look to the date of the filing of the bill "in the office of the secretary of state, and the journals of the House of Representatives showing that a message was received from the president January 6, 1862, stating that on the 24th day of the preceding month he had approved the bill."

These extrinsic facts were not received to contradict a record made by the president, because he had made none as to the date, nor to supply a record that he was required to make, because the law did not impose such a duty upon him. In the opinion the case of *Fowler* v. *Peirce*, *supra*, was cited in support of the proposition

that when the passage of a bill is disputed, the court, to inform itself, may look to the journals of the legislature with respect to it, and not in support of the right to hear and consider oral evidence. In the conclusion of the opinion the court did use this language: "We are of opinion, therefore, on principle, as well as authority, that whenever a question arises in a court of law of the existence of a statute or of the time when a statute took effect, or of the precise terms of a statute, the judges, who are called upon to decide it, have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question, always seeking, first, for that which in its nature is most appropriate, unless the positive law has enacted a different rule." This is a broad statement, and, taken by itself, probably indicates a more general rule than was intended by the court. Reference is also made to *People* v. *Petrea*, 92 N. Y., 128. In that case an act of the legislature of the state of New York was alleged to be unconstitutional because it was a local act, and had not been reported to the legislature by commissioners appointed to revise the statutes. The defendant offered to prove by the clerk of the senate, by the commissioners appointed to revise the statutes, by the journals of the legislature, and by the original act itself, that the bill was not reported to the legislature by the commissioners. This offer the trial court overruled. But the court of appeals said: "We think the offer to prove, by the journals of the legislature, and by the original act, that the act of 1881 was not reported by the commissioners, was improperly overruled." No error was found in the ruling of the court excluding the verbal testimony offered.

In the case of *Berry* v. *Railroad Co.*, 41 Md., 446, the bill, as it passed the legislature, extended the time for the completion of the road mentioned in the act for five years from the 1st day of January, 1875, but as it appeared in the printed statute book, the extension was for five years from the 1st day of January, 1870. The question was, ought the court, in its investigations, to look behind the

signature of the governor to the bill filed for record, and the imprints of the great seal? The court said: "But while the authorities just cited maintain that it is the right and duty of the court to go behind the authentication of the statute, and to receive evidence such as that furnished by the engrossed bills, with the indorsements thereon, and the journals of proceedings of the two houses of the legislature upon the question of the constitutional enactment of what purports to be the statute, they all seem to concur in maintaining that no statute having the proper forms of authentication can be impeached or questioned upon mere parol evidence. Nor do we decide in this case that the journals of the two houses, though required by the constitution to be kept as records of their proceedings, would be evidence *per se* upon which the validity of a statute having the required authentication would be successfully questioned as to the manner of its enactment. But we think the journals, in connection with other competent evidence upon the subject, may be examined as means of information to aid in arriving at a correct conclusion as to what was the action of the legislature on any particular bill before it." From this opinion it appears that the constitution of Maryland required the journals of the two houses to be kept as records of their proceedings. In the light of authority we are of the opinion—*First*, that the court cannot receive verbal evidence to prove that a law was not passed and approved on the day it purports to have been passed and approved; *second*, that when the passage or the approval of a law is questioned, the court may look beyond the printed statute to the engrossed bill, as approved and filed with the secretary of the state or the territory, as the case may be; *third*, that when the journals of the two houses showing their action are kept in pursuance of law, the court may look to such journals to ascertain whether constitutional requirements have been complied with. The common-law rule, making the engrossed bill duly signed and enrolled with the secretary of state conclusive of its authenticity, was changed in order the more effectually to secure compliance with constitutional re-

quirements in enacting laws. We have found no provision
in the organic act of this territory requiring the journals
of the legislature to show the vote on the passage of a bill,
or the date thereof. But section 1844 of the Revised Stat-
utes of the United States does require the secretary of the
territory to "record and preserve all the laws and proceed-
ings of the legislative assembly, and all the acts and pro-
ceedings of the governor, in the executive department."
This record the secretary makes as commanded by law,
and under the sanction of his official oath. A record so
made is entitled to more weight than the entries in the
legislative journals not made in pursuance of positive law.
The law presumes that the acts of a public officer, in pur-
suance of law, and under the sanction of his official oath,
are correct because he is presumed to keep his oath and
to do his duty. A legislative enactment, approved by the
governor, and filed and recorded in the office of the sec-
retary of the territory, constitutes a record of a high order.
This law appears from that record to have been duly
passed by the legislature, and approved by the governor
on the 8th day of March, 1888, before the expiration of the
60 days, and it so appears in the printed volume. We do
not feel authorized to look beyond this record to the legis-
lative journals, or to receive verbal testimony to support or
contradict the record in the office of the secretary of the
territory. In addition to the cases cited, the following,
among others, support the conclusions reached above:
*Pangborn* v. *Young*, 32 N. J. Law, 29; *Town of South Ot-
tawa* v. *Perkins*, 94 U. S., 260; *Post* v. *Supervisors*, 105
U. S., 667; *Green* v. *Weller*, 32 Miss., 650; *People* v.
*Commissioners*, 54 N. Y., 276; *People* v. *Devlin*, 33 N. Y.,
269; *Railroad Co.* v. *Governor*, 23 Mo., 353; *Com.* v. *Mar-
tin*, 107 Pa. St., 185.

The plaintiff also contends that the naming of the court
commissioners in the act was an attempt to appoint terri-
torial officers contrary to section 1857 of the Revised Stat-
utes of the United States. That section is as follows: "All
township, district and county officers, except justices of
the peace and general officers of the militia, shall be ap-
pointed or elected in such manner as may be provided by

the governor and legislative assembly of each territory, and all other officers not herein otherwise provided for the governor shall nominate, and by and with the advice and consent of the legislative counsel of each territory shall appoint." If the court commissioners are public officers, and may not be regarded as district officers, the appointment in the act contravenes the section' of the Revised Statutes quoted. These commissioners come within the definition of officers. Their term of service is fixed by law, and their duties are not confined to a particular act or to any individual or individuals. Their duties are not created or regulated by contract, but are to the public. One commissioner is appointed for the Northern and one for the Southern division of the First judicial district, a third for the Second judicial district, and a fourth for the Third judicial district. It is made their duty to examine all court certificates given to jurors and witnesses, and to administer oaths to holders, and to examine as to the service performed, miles traveled, etc., and to allow the amount claimed if found correct; and if incorrect, to in-increase or decrease the sum to the correct amount. They are authorized to draw upon the auditor of public accounts for a sufficient amount to pay jurors, witnesses, and phonographic reporters, and to keep an accurate account of all moneys so coming to their hands, etc. To these commissioners the law in question intrusts the duty of ascertaining and paying the fees due the jurors, witnesses and court reporters in their respective districts. Their duties are confined to the districts for which they are appointed, and we are disposed to hold that they should be regarded as officers of the district to which their duties are confined. Plaintiff also urges that the act upon which defendant relies is retroactive. The letter of the first section, considered by itself, would appear to be subject to that objection. It declares that "from the 1st day of January, 1888, until the 1st day of January, 1890, witnesses for the territory in criminal cases and jurors in the district courts shall be paid the sum of two dollars per day for each day's attendance at court, and twelve cents per mile one way for the distance necessarily traveled from his place

of residence to the place of holding court." . The other provisions of the act relate to the future. The last section, as amended, declares that the act shall be in force from and after the date of its approval, which was March 8, 1888. The services for which the fees were claimed were rendered in the preceding month, and the certificate of attendance was made and delivered to plaintiff during that month. There was a law then in force fixing the fees of jurors and witnesses in all cases, and the last clause of section 2 of an act of Congress approved June 23, 1874, provides that the "costs and expenses of all prosecutions for offenses against any law of the territorial legislature shall be paid out of the treasury of the territory." The plaintiff's right to the fees had accrued and vested before the law of March 8th, *supra*. It remained for the legislature only to make the appropriation, and then the auditor to audit the claim, and for the treasurer to pay it. Inasmuch as this had not been done, the legislature could provide that the court commissioner might adjust and pay the claim; but the amount should be determined by the law in force at the time the services were rendered. We are disposed to hold that the law in question should be given a prospective, and not a retrospective, effect. When the services as witness were rendered, the law then in force created an obligation upon the part of the territory to pay the plaintiff the amount of his fees according to the law then in force. Good faith on its part required this much. Potter's Dwar. St., 477, 478; Id. 162, note 9; 1 Kent, Comm., 455. The motion of the defendant to quash the writ of *mandamus* is allowed.

HENDERSON, J., and BOREMAN, J., concurred.