## McPHAIL v. LATOUCHE PACKING CO.

No. C-452.

Third Division.

July 17, 1931.

298

Donohoe & Dimond, of Valdez, and Tanner & Garvin, of Seattle, Wash., for plaintiff.

Roy E. Bigham and H. T. Ivers, both of Seattle, Wash., for defendant.

HILL, District Judge.

This action was brought by Jemima Mearns McPhail, plaintiff, to recover from Latouche Packing Company, defendant, compensation for the death of her husband, Robert McPhail, who died February 10, 1928, as the result of injuries received by him arising out of and in the course of his employment by the defendant. It is admitted that neither party to the action has elected to reject the provi-

sions of the Workmen's Compensation Acts of Alaska. Plaintiff alleges that defendant has paid her $5,460, and under the provisions of chapter 77 of the Laws of Alaska of 1927 she is entitled to $6,300 for herself and her two minor children. She asks judgment for $840, with interest, costs, and attorney's fees.

The defendant appeared, filed no answer or other pleading, but entered into a written stipulation with the plaintiff which in effect admits all the facts alleged in the complaint, sets forth the contentions of defendant upon which it raises its defenses, and provides that the court shall render judgment for plaintiff if it supports the plaintiff's view of the law, and shall dismiss the action with prejudice if it finds with defendant's contentions.

This proceeding is analogous to that prescribed by chapter 28, Compiled Laws of Alaska 1913, tit. 13 (section 1080 et seq.) and, as there is no doubt that the controversy is real, the court acquiesces therein.

The defendant's position is stated in the stipulation as follows:

"Defendant claims and contends that the action is governed entirely by the provisions of chapter 98 of the Session Laws of Alaska of the year 1923, as the same has been amended prior to the 7th day of June, 1927, and therefore that said defendant has paid to the plaintiff the full amount of compensation due her, both for herself and said minor children, and that the provisions of chapter 77 of the Session Laws of Alaska of the year 1927 have no application to this action.

"The only dispute between the plaintiff and defendant arises as to the law, that is to say, whether upon the death of the said Robert McPhail, plaintiff, the widow, was entitled to claim compensation under the provisions of said chapter 77 of the Session Laws of Alaska, 1927, or whether compensation must be claimed and paid under the provisions of said chapter 98 of the Session Laws of Alaska of the year 1923, as amended."

There is also included in the stipulation the following paragraph: "Each party * * * consents to be bound in all respects both as to pleading and proof by the statements in this stipulation set forth."

Nowhere in the stipulation is is there any statement of the facts upon which defendant bases its claim that the 1927 act is invalid. Its brief states its contentions as follows:

"Defendant contends that chapter 77 of the Laws of Alaska, 1927, has no application for two principal reasons:

"1. That chapter 77, Laws of Alaska, 1927, (Being House Bill 66" (67) "was invalid, did not become the law of Alaska and did not in fact supersede the act of 1923.

"2. That even if this Act were valid, which is of course not admitted, still the plaintiff will be entitled to recover only under the law in force at the time the deceased was injured and not by the law in force at the time of deceased's death. * * *

"In support of defendant's first contention, it is merely necessary to draw the court's attention to the Organic Act of the Territory and to the facts surrounding the passage and approval of House Bill 67, which later became chapter 77, Laws of Alaska, 1927. Section 14 of the Organic Act (48 U.S.C.A. § 86) provides inter alia as follows:

" 'If the governor neither signs nor vetoes a bill within three days (Sundays excepted) after it is delivered to him, it shall become a law without his signature, unless the legislature adjourns sine die prior to the expiration of such three days. If any bill shall not be returned by the governor within three days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevents the return of the bill, in which case it shall not be a law.'

██ "It appears from the original engrossed bill on file in the office of the Secretary of the Territory that House

Bill 67 (chapter 77, Session Laws of Alaska, 1927), was passed by the House of Representatives on April 29, 1927, was passed by the Senate May 4, 1927, was received in the Governor's office May 7, 1927 at 4:45 P. M. and was approved by the Governor May 9, 1927. It also appears that the Legislature of Alaska adjourned the regular session for 1927 on May 5, 1927. Of these facts the court will take judicial notice. Thus it appears that *this bill was not delivered to the Governor until two days after the adjournment of the legislature* and was not approved by him until four days after such adjournment."

The question immediately arises: Will the court judicially notice that these are facts?

█ █ Courts take judicial notice of certain facts because such facts are so generally known and so universally accepted as to be classed as common knowledge, and of certain other facts that are peculiarly within their knowledge as courts. Wigmore on Evidence (2d Ed.) § 2565 et seq. Under the principle of common knowledge above referred to, I take notice that May 8, 1927, was Sunday.

It seems generally agreed that courts are charged with the duty of investigating certain facts relative to the validity of statutes of their own sovereignty, but there is wide disagreement as to what facts shall be investigated and how the courts shall gain their information regarding them.

In Sherman v. Story, 30 Cal. 253, 89 Am.Dec. 93, the Supreme Court of California stated the question before it thus: "Is it admissible to go behind the duly authenticated enrolled Act, and examine the Journals of the Senate and Assembly for the purpose of impeaching the validity of the Act? And if it is admissible to inspect the Journals for that purpose, is it also admissible to go behind the Journals and receive other evidence of a still more fugitive and less reliable character, documentary and parol."

Reviewing extendedly and exhaustively British and American opinions on the subject, the court comes to this

final conclusion: "In this case, the enrolment, the record of the statute, exists, and we are satisfied that we should not look beyond it, certainly, not beyond the record, aided by the Journals."

The court then adverts to Fowler v. Peirce, 2 Cal. 165, cited in defendant's brief, and says: "It is quite evident that much of the reasoning in Fowler v. Peirce, 2 Cal. 165, is opposed to the views here expressed. * * * Possibly the case may be distinguished and taken out of the rule. But, if not, it must be overruled."

■ The Supreme Court of Oregon have held: "That the court will take judicial knowledge of the journals of the legislature for the purpose of impeaching the validity of the enrolled act on file with the secretary of state; and when, from such journals, it affirmatively appears that the bill, as filed in the secretary's office, did not in fact pass the legislature, the courts will refuse to recognize it as a valid law. But every reasonable presumption is to be made in favor of legislative proceedings, and when the constitution does not require certain proceedings to be entered in the journal the absence of such a record will not invalidate a law. It will not be presumed from the mere silence of the journal that either house has exceeded its authority, or disregarded constitutional requirements in the passage of legislative acts." State v. Rogers, 22 Or. 348, 30 P. 74, 77, following Currie v. So. Pac. Co., 21 Or. 566, 28 P. 884; Portland v. Yick, 44 Or. 439, 440, 75 P. 706, 708, 102 Am.St.Rep. 633.

In the latter case the court says: "Indeed, the general rule seems to be that courts will take judicial notice of the contents of the journals and other records of legislative bodies, required to be kept by the fundamental law, which may in any manner affect the validity or the meaning and proper construction of an act. But further than this they will not go, and they will not take judicial cognizance of any fact that is without legal potency to affect the validity of the act or to explain its meaning or construction."

■ I shall follow the Oregon rule, and in this case I take judicial notice, derived from the engrossing act and the journals of the Legislature, that House Bill No. 67, which later became chapter 77, Laws of Alaska 1927, was passed by the House April 29, by the Senate May 4, was engrossed May 5, and approved by the Governor May 9, and that the Legislature adjourned sine die May 5.

■ In addition, the defendant asks me to find that the bill was not presented to the Governor until May 7, two days after the Legislature adjourned. On the cover of the bill is indorsed the following: "Received May 7, 1927, Governor's office 4:45 P. M." This indorsement is not signed. There is nothing to indicate by whom it was made. There is no requirement in the law that a bill must be presented at the Governor's office nor that the time when the bill is presented to the Governor shall be indorsed thereon. Taken literally, the indorsement does not say that the bill was first presented to the Governor on ·May 7, 1927. It refers only to the time of receipt at the Governor's office, and it does not follow that the Governor himself may not have brought it to the Governor's office.

An examination of the joint rules of the Alaska House and Senate of 1927 shows that these bodies imposed upon the engrossing committee the duty of transmitting to the Governor a bill after it was engrossed. I think the defendant leans too heavily on the somewhat overworked judicial notice theory, and it is asking too much of judicial knowledge to require me to say that the engrossing committee did not in fact present a bill to the Governor in accordance with the general rule, and, if they presented it, to say whether they presented it to him personally or left it in his office. It does not seem possible that the law requires such omniscience of a judge. Certainly, the great weight of authority does not require it.

■ The argument of the attorneys for the defendant upon the validity of the act is wholly contained in certain excerpts quoted in their brief from an opinion rendered by

Hon. John Rustgard, Attorney General of the territory of Alaska, that the 1927 act in question was not valid. It is evident he based his opinion entirely upon the assumed fact that the bill was not presented to the Governor until after the Legislature had adjourned. This court will not presume that fact. But, even if it is conceded for the purposes of argument that the mere clerical act of handing the bill to the Governor did not take place until May 7, there is not lacking well-considered authority that the delay does not invalidate the bill. Hartness, Governor, v. Black, Secretary of State, 95 Vt. 190, 114 A. 44.

██ The earliest date that the bill could have been delivered to the Governor was May 5 after engrossment. Therefore the Governor must have signed it within three days (Sundays excepted) after it was delivered to him and four days after the Legislature adjourned.

The theory of Fowler v. Peirce, supra, and Trustees of School District No. 1 v. County Commissioners of Ormsby County (on rehearing), 1 Nev. 340, affirmed in Thornburg v. Hermann, 1 Nev. 473; Territory v. Clayton, 5 Utah, 598, 18 P. 628, and Maricopa County v. Osborn, 4 Ariz. 331, 40 P. 313, that the legislative powers are indivisible and must be exercised concurrently and therefore, after adjournment of the Legislature, the Governor cannot approve a bill, does not appeal to me.

Under the Organic Act of Alaska, § 4 (48 U.S.C.A. § 67), "the legislative power and authority of said territory [Alaska] shall be vested in a legislature, which shall consist of a senate and a house of representatives." Strictly speaking, the Governor is not a part of the legislative body of the territory. He is an executive officer, and as such exercises a legislative function merely as a check on the Legislature, and his approval is required only to show that he does not intend to exercise his right to check the particular legislation before him. After a bill has passed both houses and has been engrossed and presented to the Governor, the Legislature cannot withdraw or alter that bill

unless the Governor vetoes it. When he does approve within three days (Sundays excepted), all of the legislative requirements as to that bill have been complied with by the legislative body while it was in session and authorized to act, and, although the Legislature has adjourned and can no further act, the Governor still retains his official capacity, and I see no reason why his power to approve the bill should be taken away because a body which has nothing further to do with it has adjourned. This is in accordance with the later authorities, and I have no hesitation in following them. Lewis' Sutherland on Statutory Construction (2d Ed.) vol. 1, p. 103; Opinion of Attorney General A. Palmer Mitchell Rendered to the President of the United States, 32 Op. of Attys. Gen. page 225, and citations therein; Hartness, Governor, v. Black, Secretary of State, supra; State v. Board of Sup'rs of Coahoma County, 64 Miss. 358, 1 So. 501.

I hold the 1927 act valid.

This brings me to a consideration of defendant's second contention.

When, moved by considerations of economy and certainty, the lawmakers of the United States enacted workmen's compensation acts, they departed entirely from the intricate theories and rules involving negligence, contributory negligence, assumption of risk, and fellow servant, with their many ramifications and distinctions all based upon the personal acts of employer and employee, and in the common law considered and classified as the law of torts. The legislatures approached the problem of injuries to employees from an entirely different angle founded not in tort but based on a general relation of employer and employee. They formulated general liabilities and limitations regarding compensation for injuries which they imposed upon those who assumed that relation, and it followed as a natural sequence that those who voluntarily contracted with each other to assume that relation were conclusively presumed to adopt as a part of that contract the liabilities and limitations imposed by the applicable Workmen's Compensation

Act. Martin v. Kennecott Copper Corp. (D.C.) 252 F. 207; Beckoff v. Dan Creek Mining Co., 6 Alaska, 218. If the law was changed during the life of the original contract and before any liabilities thereunder became fixed, the provisions of the new law, upon becoming effective, superseded those of the former and became new and amended terms of the employment contract if the relation of employer and employee continued thereafter. In this case the law in force at the time of injury was the Alaska Workmen's Compensation Act of 1923, section 7 of which provides as follows: "The right to compensation for an injury and the remedy therefor granted by this act shall be in lieu of all rights and remedies as to such injury now existing either at common law or otherwise, and no rights or remedies, except those provided for by this Act, shall accrue to employees entitled to compensation under this Act while it is in effect; nor shall any right or remedy, except those provided for by this Act, accrue to the personal or legal representative, dependents, beneficiaries under this Act, or next of kin of such employee." Laws Alaska 1923, p. 243, c. 98.

By virtue of the 1923 statute, the contract itself contained a provision that neither "beneficiary" nor "next of kin" should receive any compensation except that fixed by the 1923 statute; that is, in the case of the employee leaving a widow and two children under 16 years of age, $5,460. The payment of that sum is the definite obligation which the employer assumed upon entering into a lawful contract with his employee.

The plaintiff strenuously urges that hers is a new right of action independent of that of her deceased husband, and that the employer's obligation to her is to be measured by the 1927 Alaska Workmen's Compensation Act which was in force when her husband died. While it is true that her cause of action is separate and distinct from that of her deceased husband and is necessarily different in party plaintiff, in the time it arose, and in the provision of the statute by which the amount of the employer's obligation

is to be ascertained, nevertheless, the foundation of her right of action is the original injury to her husband, and the new action is dependent upon the existence of a right in the husband just before his death to have maintained an action for his injury. Michigan Central Railroad Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, Ann. Cas.1914C, 176. Her right is entirely statutory and lies dormant in her until her husband's death and is based upon and to be measured by his contract with his employer. To apply the 1927 act is to so change the employer's liability as to impair the obligation of the contract he entered into with his employee. Preveslin v. Derby & Ansonia Developing Co., 112 Conn. 129, 151 A. 518, 70 A.L.R. 1426; Gauthier's Case, 120 Me. 73, 113 A. 28; 12 C.J. page 1058, § 704.

Although the Federal Constitution does not in terms prohibit a territorial legislature from passing a law impairing the obligation of contracts, nevertheless the general principles of natural justice underlying the prohibition imposed on the states certainly seems equally applicable to territorial legislatures. It has been held that territorial legislatures have no power to pass such laws. 12 C.J. p. 989, § 600 (5). Certainly no such judicial construction and application should be made as would give the enactment of a territorial legislature the effect of impairing the obligation of a contract unless the wording of the statute to be construed absolutely requires such construction.

I therefore hold that the liability of the defendant is to be measured by the 1923 statute, and, since it has paid the full compensation required by that statute, an order may be drawn dismissing the plaintiff's action with prejudice in accordance with the stipulation.