Adam HOOD, Appellant,

v.

STATE of Alaska, WORKMEN'S COMPENSATION BOARD, Henson Masonry and Employers Insurance of Wausau, Appellees.

No. 3289.

Supreme Court of Alaska.

Feb. 3, 1978.

M. Ashley Dickerson, Anchorage, for appellant.

Arden E. Page, Burr, Pease & Kurtz, Inc., Anchorage, for appellees Henson Masonry and Employers Ins. of Wausau.

Elizabeth R. Arnold, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for appellee State of Alaska, Workmen's Compensation Bd.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

BOOCHEVER, Chief Justice.

This appeal presents a question as to the applicable statute for awarding Adam Hood compensation for permanent partial disability. He received an injury to his left knee on September 6, 1973 [1] while employed by Henson Masonry. On March 23, 1976, Mr. Hood was rated as suffering a forty percent permanent partial disability of the leg. In September 1973, AS 23.30.190(2) provided for 248 weeks compensation, not to exceed $20,160.00 for loss of a leg. This section was amended by chap. 83, sec. 5, Session Laws of Alaska 1975, effective May 22, 1975, which doubled the maximum allowable compensation to $40,320.00. Hood would be entitled to $8,064.00 if the act in effect at the time of his injury applies, as opposed to $16,128.00, if the act in effect at the time his condition was rated as a permanent partial disability is applicable. The Alaska Workmen's Compensation Board found that the act in effect on the date of injury was applicable, and the superior court affirmed. Although a very close question is presented, we have concluded that Mr. Hood is entitled to the higher benefits of the later act.

Mr. Hood's argument is based on two contentions. Firstly, he argues that AS 23.30.172,[2] which became effective in 1974, requires application of the benefit schedule existing at the time his condition was rated as permanent or at the time the award was computed. Secondly, it is his position that, regardless of whether AS 23.30.172 has such an effect, the applicable act for awarding compensation for a permanent partial disability is the one in effect at the time that the condition became fixed for rating rather than the act at the date of injury.

1. He also received a facial injury resulting in scarring, for which he was awarded $2,500.00 for disfigurement. That portion of the award is not contested on this appeal.

2. AS 23.30.172, as enacted in 1974, provided:

Benefits for temporary and permanent disability shall be calculated under this chapter according to currently existing benefit rates regardless of the benefit rates in existence at the time of the injury, unless this calculation would cause a decrease in the actual benefits receivable.

At the outset, a question is presented as to whether we should give deference to the Alaska Workmen's Compensation Board's construction of the statute. The Board in its decision referred to the fact that at the time AS 23.30.172 became law, the benefit provided for loss of a leg was $20,160.00. The decision also held that the section applied to rates of compensation only and not to single sum benefits payable for permanent disabilities.

In referring to an analogous situation in *Union Oil Co. of California v. Dept. of Revenue*, 560 P.2d 21, 23 (Alaska 1977), we stated:

> In recent decisions, we have distinguished between two types of questions which may confront a court in judicial review of administrative action. Where the agency decision involves the formulation of fundamental policy or the particularized expertise and experience of administrative personnel, this court will defer to the administrative decision, inquiring only whether it has a reasonable basis. *State v. Aleut Corporation*, 541 P.2d 730, 736–37 (Alaska 1975). On the other hand, where, as here, the issues to be resolved turn on statutory interpretation, the knowledge and expertise of the agency is not conclusive of the intent of the legislature in passing a statute. Statutory interpretation is within the scope of the court's special competency, and it is our duty to consider the statute independently. *State v. Aleut Corporation, supra* at 736–37. (footnote omitted)

■ While the Alaska Workmen's Compensation Board is a quasi-judicial agency, we believe that the same criteria should apply.[3] Here the issue to be resolved turns on statutory interpretation rather than formulation of fundamental policy involving particularized expertise of administrative personnel, and we shall independently consider the meaning of the statute.

The first contention of Hood requires a construction of AS 23.30.172 as applicable in March 1976 when Mr. Hood's permanent partial disability condition was rated.[4] That section specified:

> Benefits for temporary and permanent disability shall be calculated under this chapter according to currently existing benefit rates regardless of the benefit rates in existence at the time of the injury, unless this calculation would cause a decrease in the actual benefits receivable.

Most of the arguments focus on whether this provision made applicable the 1975 amendment to AS 23.30.190 doubling the maximum compensation for loss of a leg. It is Hood's position that AS 23.30.172 applies to permanent partial disability, and that the benefits applicable in March 1976 when his condition was rated as a permanent partial disability should be regarded as those "currently existing."

The employer and the state, on behalf of the Workmen's Compensation Board, take the position that AS 23.30.172 does not apply to permanent partial disability benefits, and that to hold otherwise would impair contracts in violation of the federal and state constitutions.[5]

■ There are two conflicting principles applicable to the construction of AS 23.30.-172. Workmen's compensation acts should be liberally construed in favor of the employee,[6] but statutes are presumed to operate prospectively and will not be given a

**3.** See *London v. Fairbanks Municipal Utilities' Employers Group*, 473 P.2d 639, 642 n. 2 (Alaska 1970).

**4.** AS 23.30.172 was amended by chap. 252, sec. 3, SLA 1976, effective September 22, 1976, so as not to apply to permanent partial disability, and then repealed in 1977. Chap. 75, sec. 11, SLA 1977.

**5.** Art. I, sec. 10 of the United States Constitution prohibits states from "impairing the obligation of contracts," and art. I, sec. 15 of the Alaska Constitution similarly provides that no law impairing the obligation of contracts shall be passed.

**6.** *S.L.W. v. Alaska Workmen's Compensation Board*, 490 P.2d 42, 43 (Alaska 1971); *Libby, McNeill & Libby v. Alaska Industrial Board*, 191 F.2d 262, 264, 13 Alaska 396 (9th Cir. 1951), *cert. denied*, 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683 (1952).

retroactive effect, unless by express terms or necessary implication, it clearly appears that that was the legislative intent.[7]

The employer argues that the intent of AS 23.30.172 was to bring the benefits of permanently totally disabled persons up to those of employees whose injuries resulted in anything other than permanent total disability. Prior to the 1974 amendments to the act, a permanently totally disabled person's wages were to be considered as not exceeding $175.00 per week. AS 23.30.-175(b). Maximum compensation was sixty-five percent of the $175.00. AS 23.30.180. Individuals with other types of disability, however, were subject only to a $175.00-a-week maximum payment. AS 23.30.175(a). Since compensation was at the rate of sixty-five percent of average weekly wages, their maximum weekly rate for compensation purposes was $269.23 per week as opposed to the $175.00 maximum allowable in computing permanent total disability compensation. The 1974 amendments did have the effect of eliminating that discrepancy.[8] But there is no indication that this was the sole purpose of the enactment.

Both the state and the employer argue that the 1974 act applies only to "rates of compensation" established by AS 23.30.175 and .180 and not to maximum benefits of sec. 190 which are payable as a lump sum and in addition to the on-going compensation based on a percentage of the weekly wage. We find this argument unpersuasive in view of the language that "benefits" were to be calculated at "currently existing benefit rates." We construe the provision to mean that the "benefits" for loss of a leg

would be calculated at the currently-existing benefit rate for such a permanent partial disability.

The state presents a complex argument based on the legislative history of AS 23.-30.172 to the effect that partial disability was not intended to be covered. There are four basic types of disability compensation payable under the Alaska Workmen's Compensation Act: (1) temporary total disability, (2) temporary partial disability, (3) permanent total disability and (4) permanent partial disability.[9] AS 23.30.172 referred to "benefits for temporary and permanent disability." The state would have us construe the "permanent disability" provision as applying only to "permanent total disability."

With reference to the legislative history of AS 23.30.172, the state points out that the Senate Finance Committee report for March 26, 1974 indicates the amount that the state might be required to pay for each employee entitled to increased permanent total disability compensation, and that the appropriations and fiscal notes[10] accompanying the budget documents for the Division of Workmen's Compensation for fiscal years 1974 through 1977 were based solely on projected supplements to weekly rates of compensation paid for temporary and permanent total disability and death. No mention is made of maximum awards for permanent partial disability. Thus, the appropriation for fiscal year 1976 which doubled the benefit for permanent partial disability still was based solely on projected supplements to weekly rates of compensation paid for temporary and permanent total disability without reference to permanent partial

7. *Cropley v. Alaska Juneau Gold Mining Co.*, 131 F.Supp. 34, 36, 15 Alaska 531 (D.C.1955); *Stephens v. Rogers Const. Co.*, 411 P.2d 205, 208 (Alaska 1966); *Hill v. Moe*, 367 P.2d 739, 742 (Alaska 1961), *cert. denied*, 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962). Sands, 2 Sutherland Statutory Construction, § 41.04 at 252 (4th ed. 1973).

8. Additional compensation for those previously injured was to be appropriated from the general fund rather than being payable by the employer or its insurance carrier. Chap. 51, sec. 2, SLA 1974.

9. *London v. Fairbanks Municipal Utilities' Employers Group*, 473 P.2d 639, 642 (Alaska 1970).

10. AS 24.30.035 provides in part:
   *Fiscal notes on bills.* Before a bill which would require increased appropriations by the state is reported to the rules committee, there shall be attached to the bill an estimate of the probable amount of the appropriation increase for the succeeding fiscal years. The estimate or statement shall be prepared by the department or departments affected.

disability. This history may give some indication that the legislature did not intend AS 23.30.172 to apply to permanent partial disability rates. However, this conclusion is weakened by the fact that one legislature passed the 1974 bill, and a different legislature considered the appropriations for fiscal year 1976.[11] Moreover, the Division of Workmen's Compensation of the Department of Labor knew how many employees had previously been rated as permanently totally disabled so that computations could be made as to the increased amounts they would receive. There was little basis, however, for predicting the number of employees previously injured who would subsequently be rated as having a permanent partial disability.

A further enactment to be fitted into the construction of this statutory jigsaw puzzle is the amendment to AS 23.30.172 which was passed in 1976. Chap. 252, Sec. 3, SLA 1976 altered the section so as to limit its provisions expressly to temporary total disability cases which have existed for more than two years and permanent total disability. There is thus no question but that the provision does not apply to permanent partial disability awards accruing after the effective date of the 1976 amendment—September 22, 1976.[12] That amendment could be construed either as conforming to the prior intention of the legislature or as effecting a change so as to eliminate coverage of permanent partial disability from its provisions.

In favor of the employee's construction of the section is the fact that the 1974 act referred to "benefits for temporary and permanent disability." There are two types of permanent disability—total and partial. Since neither was specified, the normal literal reading of the act would include both.

Still another consideration unargued by the parties seems significant. The 1974 act referred to "currently existing benefit rates regardless of the benefit rates in existence at the time of the injury." "Currently existing rates" could have meant those in existence at the time of the enactment of the 1974 act, AS 23.30.172, or those currently existing at the time that the benefits became due and payable. Again, we are confronted with conflicting principles: one that workmen's compensation acts should be liberally construed in favor of the employee, and the other that statutes are presumed to operate prospectively. The latter principle in this case would dictate that the newly-enacted rates not be given a retroactive effect, so as to apply to injuries previously received, unless expressly indicated by the act. Here, however, it is clear that the legislature intended to give the act a retroactive effect so that we are concerned only with the scope of its retroactive provisions.

■ We have concluded that the higher benefits prescribed by the 1975 amendment to AS 23.30.190 are applicable. Of the many conflicting policies and rules of construction, we find that the literal reading of the statute together with the liberal construction to be given workmen's compensation laws should control. AS 23.30.172 referred to "permanent disability" without limiting that term to a particular type of such disability. Thus, literally, it applied to permanent partial disability as well as to permanent total disability. If the uniformly-accepted legislative policy of benefitting the employee were enhanced by some other construction, we might be persuaded by the various arguments presented. But here, the liberal construction to be given compensation acts is in accord with the literal terms of the statute.

■ Both the employer and the state additionally contend that to make the 1975 amendment applicable impairs contractual

---

11. AS 23.30.172 was passed by the second session of the Eighth Legislature. The newly-elected Ninth Legislature increased the permanent partial disability benefits by amending AS 23.30.190(2), effective May 22, 1975.

12. It should be pointed out that this decision applies only to the limited number of cases involving permanent partial disability in which injury occurred prior to May 22, 1975 when permanent partial disability benefits were increased, and disability did not become fixed until after that date.

rights in violation of the state and federal constitutions. We find this argument inapplicable to the law in question as sec. 2 of chap. 51, SLA 1974 expressly provides that: "[f]unds needed to carry out the provisions of this section shall be appropriated from the general fund." Since the ultimate burden of making the additional payments is not imposed on either the employer or its insurance carrier, we fail to see where any of their contractual rights are impaired.[13]

REVERSED AND REMANDED.[14]

---

13. We do not pass on whether the act would otherwise impair contract rights. The traditional analysis following *Trustees of Dartmouth College v. Woodward*, 4 Wheat. (17 U.S.) 518, 4 L.Ed. 629 (1819), would hold that the rights and obligations of the parties vested at the date of injury and could not be altered thereafter. *Mitchell v. United States Fidelity & Guaranty Co.*, 206 F.Supp. 489, 490 (E.D.Tenn. 1962); *McPhail v. Latouche Packing Co.*, 8 Alaska 297, 308 (D.C.Alaska 1931); *Phillips v. City of West Palm Beach*, 70 So.2d 345, 346 (Fla.1953); *Salmon v. Denhart Elevators*, 72 S.D. 110, 30 N.W.2d 644, 648 (1948); *but see, Price v. All American Engineering Co.*, 320 A.2d 336, 339–40 (Del.1974), which held that a statute increasing benefits to employees previously injured did not violate the contract clause because the Workmen's Compensation Act created a status-oriented relationship, not a contractual one. Moreover, somewhat like the Alaska act, the Delaware statute did not deprive insurance carriers of property without due process of law, as they had a right to reimbursement of the extra payments from the state. *See also, McAllister v. Board of Education*, 79 N.J.Super. 249, 191 A.2d 212, 217–18 (1963).

14. Based on the result reached, we do not consider Hood's second argument that, without considering AS 23.30.172, he would be entitled to the higher award due to the amendment of AS 23.30.190 before his partial disability became permanent. It is his contention that the compensation for permanent partial disability became due as of the date his condition could be rated, which was March 1976, rather than the date of injury in 1973. Although a few states hold this position, *Peters v. Chrysler Corp.*, 295 A.2d 702, 704 (Del.1972); *LeBrun v. Woonsocket Spinning Co.*, 106 R.I. 253, 258 A.2d 562, 564–65 (1969); *Allen v. Kalamazoo Paraffine Co.*, 312 Mich. 575, 20 N.W.2d 731, 732 (1945), in the absence of legislation, we would find it difficult to adopt in view of what we believe to be the consistent contrary construction by the Alaska's Workmen's Compensation Board.