## THE PEOPLE OF THE TERRITORY OF UTAH, Ex Relatione, LEWIS P. KELSEY, Respondent, *v.* GEORGE D. PYPER, Court Commissioner.

WITNESS.—FEES.—WHEN RIGHT VESTS.—On the 27th day of February, 1888, the clerk of the third district court issued to relator's assignor a certificate for fees as a witness in a Territorial criminal case. The statute then in force provided that witness fees in such case should be $1.50 per day, and 20 cents per mile for travel. On March 8th, 1888, the Territorial Legislature passed two acts, one appropriating money for the payment of jurors and witnesses in Territorial criminal cases for the years 1888 and 1889, the other providing a method for making out certificates and certifying them, and also naming court commissioners to pay them, and prescribing as fee for witness from January 1st, 1888, to April 1st, 1890, $2.00 per day, and 12 cents per mile for travel; *held*, that witness' right to fee was fixed by the statute in force at the time the service was rendered, and that so far as the last named act above undertook to change the compensation for services theretofore rendered, it was void.

ID.—ID.—FUND FOR PAYMENT.—Under the circumstances of the above case, the Legislature, by making the appropriation above mentioned, meant to provide a fund for the payment of all fees of witnesses accruing after January 1st, 1890, and to commit the payment thereof to the court commissioners.

ID.—ID.—REFUSAL TO PAY.—When the court commissioner refuses in good faith to pay, it is error to impose upon him the costs of the proceeding compelling him to pay the claim.

APPEAL from a judgment awarding a peremptory writ of *mandamus* of the district court of the third judicial district.  The opinion states the facts.

*Mr. Jabez G. Sutherland,* for the appellant.

*Mr. Orlando W. Powers,* for the respondent.

HENDERSON, J.:

The plaintiff commenced proceedings in the third district court for a *mandamus* against the defendant to obtain $4.50 due from the Territory for fees as a witness on the part of the people in a criminal case.  An alternative writ was issued, averring that on the 27th day of February, 1888, the clerk of the third district court issued and delivered to one John D. Stevenson a certificate showing that said Stevenson had during said month of February, 1888, been summoned and served as a witness for the people in a criminal case, and that he had attended one day, and traveled 15 miles, and that he was entitled therefor to $4.50; that said Stevenson had assigned the certificate to plaintiff; that plaintiff had demanded payment from the defendant, which was refused.  On the 14th of November, 1888, the defendant, by his attorney filed a demurrer "on the ground that the writ does not state facts sufficient to constitute a cause of action," and at the same time filed a verified answer, averring that he had no power to pay the certificate except at the rate specified in Section 1 of the act entitled "An act providing for the payment of jurors, witnesses, phonographic reporters, and creating and defining the duties of court commissioner," and denying that the defendant had refused to pay the plaintiff according to the rates prescribed by the act referred to.  The cause came on for trial on the 10th day of December, 1888, and the issues were found by the Court in favor of the plaintiff, and a final judgment entered awarding a peremptory writ, with costs. From this judgment the defendant appeals.  The defendant raises the question in this court that there is no allegation in the writ that the defendant has funds in his hands with which to make payment, and that the certificate is de-

fective in form, and that therefore no cause of action is alleged. As before stated, a demurrer was filed, but there seems to have been no action taken upon it, and no such question was raised in the court below. The defendant saw fit to answer the writ, and by the answer, at least by implication, admits that payment was not refused upon any such grounds, and denies that he has refused to pay at the rate prescribed by the act of 1888, hereafter referred to. It was stated by counsel on both sides on the argument that there is a large amount of scrip outstanding to be affected by the determination of the question as to · what statute they are governed by; and it is further insisted that the defendant is acting in good faith as a public officer, only seeking the judgment of this court upon a doubtful question of construction. Under these circumstances, we are satisfied that the questions above suggested should be ignored.

On the 8th day of March, 1888, an act was passed by the legislature, and duly approved (Sess. Laws 1888, p. 196), making various appropriations, among others: "For the payment of witnesses and jurors in the criminal cases in the district courts of this territory for the years 1888 and 1889, $60,000.00; provided, that the above amount shall be drawn upon vouchers duly authenticated for services as jurors in territorial civil and criminal cases, and for witnesses in criminal cases in which the territory was liable." On the same day another act was passed (Sess. Laws 1888, p. 184), entitled "An act providing for the payment of jurors, witnesses, and phonographic reporters, and creating and defining the duties of court commissioners," the first section of which is as follows: "Section 1. Be it enacted by the governor and legislative assembly of the territory of Utah, that from the first day of January, 1888, and until the 1st day of April, 1890, witnesses for the territory in criminal cases and jurors in the district courts shall be paid the sum of two dollars per day for each day's attendance at court, and twelve cents per mile one way for the distance necessarily traveled from his place of residence to the place of holding court: provided, that in no cases shall *per diem* be allowed to any juror for any day when the major part thereof was devoted to the trial of cases under

the laws of the United States." Section 2 prescribes the duties of the clerk in issuing certificates of attendance. Various sections follow, prescribing the manner in which the jury and witness rolls shall be kept, providing for the payment for the use of the territory by litigants in civil cases of a jury fee, prescribing the practice in summoning witnesses at the expense of the Territory for impecunious defendants in criminal cases, prescribing the compensation to be paid to reporters, and the manner in which it shall be paid. Section 11 provides that "the following named persons are hereby appointed court commissioners, whose term of office shall expire on the 15th day of April, A. D. 1890, to wit: Joseph Stanford, who shall act as commissioner at Ogden, for the northern division of the first judicial district; John W. Turner, who shall act at Provo, for the southern division of the first judicial district; Benjamin Bennett, for the second judicial district; and George D. Pyper for the third judicial district." Sections 13 and 14 are as follows: "It shall be the duty of said commissioners to examine all court certificates under the provisions of this act presented to them, and compare them with the records of the court. They shall have access to all records, papers and statements, except indictments or other proceedings before the grand jury, touching upon services rendered by jurors, witnesses, and phonographic reporters, and may administer oaths or affirmations to the holders of any such certificate or the person to whom it was issued, and examine him regarding the services performed, miles traveled, etc. If the commissioner is satisfied that the service has been performed, and the certificates are correct, he shall allow the amount claimed, and, if correct, shall increase or decrease the sum to the correct amount. Section 14. Said commissioners are authorized to draw upon the auditor of public accounts for sufficient amount to pay said jurors, witnesses, and phonographic reporters upon presentation of said certificates, when audited and corrected as herein provided; provided, that neither of said commissioners shall at any time have on hand more than five thousand dollars for the purpose herein mentioned." There are further provisions of the

act regulating the duties of various officers in carrying the act into effect. An item in the act making appropriations above referred to provides for the payment of all witness and juror fees up to the first day of January, 1888. The services for which the certificate in this case was issued were rendered, and the certificate issued, in February, 1888, and before these acts were passed.

Section 2 of an act of congress approved June 23, 1874, known as the "Poland Act," provides that the "costs and expenses of all prosecutions for offenses against any law of the Territorial legislature, shall be paid out of the treasury of the Territory." The statute of the Territory (Section 5447, Comp. Laws 1888) passed and approved February 20, 1874, fixes the fees of witnesses at $1.50 per day, and 20 cents per mile for travel. The act of congress above referred to fixes the liability of the Territory, and the act of the legislature of 1874 last cited fixes the amount of the compensation, and was the law in force at the time the services were rendered, and the certificate issued; and the right to the compensation provided by this statute became a vested right, which the legislature could not take away, and Section 1 of the act of 1888, so far as it undertook to change the compensation for services already rendered, or to destroy or change rights already vested, is void. *People* v. *Clayton*, 5 Utah, 598, 18 Pac. Rep. 628; Bish. Writ. Law, §§ 175, 176; *Manufacturing Co.* v. *East Saginaw*, 19 Mich. 259; *People* v. *Board*, 9 Mich. 327. But it is claimed by the defendants that the two acts of 1888—the one making the appropriations, and the one providing for the commissioners—are *in pari materia*, and should be construed together; and that, while the appropriation appears to be for all the witnesses' and jurors' fees for which the Territory is liable for the years 1888 and 1889, when it is construed with the other act it must be construed to be an appropriation only to the amount covered by the rate specified in Section 1; that, the appropriation being thus limited, the commissioner has no power beyond it, and he invokes the principle that an inadequate appropriation only discharges *pro tanto* a precedent obligation. We admit that the acts should be construed together. They were

passed on the same day by the same authority and on the same subject. We have no doubt that the appropriation made is the fund upon which the commissioner shall draw as provided in Section 14. The appropriation is made for all the witnesses' and jurors' fees for which the Territory is liable during the years 1888 and 1889, and we are unable to discover anything in the act which indicates that it is meant as an appropriation to apply upon a greater liability, but the contrary intention to thereby discharge the entire obligation of the Territory is apparent. In Section 15 it is provided that, "when payment is made, thereupon said certificate shall be taken up, canceled, registered, and filed annually with the auditor of public accounts." By this provision the holder of this certificate would be required to deliver it up as evidence of full payment, thereby releasing his claim against the Territory. It is a matter of which the Court will take judicial knowledge, and it is apparent from past legislation that prior to the acts in question there has never been any provision for paying witnesses and jurors as the services were rendered, but that each legislature has made appropriations to pay the outstanding certificates as ascertained by a committee of the legislature. We think it apparent from this legislation that the legislature, having provided for the payment of all outstanding obligations of the kind up to January 1, 1888, intended to provide for the payment of all these certificates for which the Territory was liable after that date, and commit their payment to these commissioners who should be located near the several courts, and could make proper inquiry concerning them; but services rendered after January 1, 1888, and before the passage of these acts, should be paid according to the law then in force, and that the judgment of the Court below in this respect was right. The Court below gave judgment against the defendant for costs. This, we think, was wrong. There was no finding that the defendant was acting in bad faith in resisting the payment, and it is contrary to Section 3963, Comp. Laws, 1888: "In an action prosecuted or defended by an executor, administrator, trustee of express trust, or a person expressly authorized

by statute, costs may be recovered as in actions by, and against, a person prosecuting or defending in his own right; but such costs must by the judgment be made chargeable only upon the estate, fund or party represented, unless the Court directs the same to be paid by the plaintiff or defendant, personally, for mismanagement or bad faith in the action or defense." This is but an affirmance of the common law principle applicable to officers acting in good faith, and for the preservation of a fund in their hands. A judgment should be entered in this Court remanding the case to the court below, with instructions to so modify the judgment appealed from as to provide for payment of costs out of the funds in the defendant's hands as commissioner. Neither party should recover costs in this Court.

JUDD, J., and BOREMAN, J., concurred.